**Ron KOBS and Stacie Kobs, Plaintiffs–Appellants,**

v.

**ARROW SERVICE BUREAU, INC., Defendant–Appellee.**

No. 97–1383.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1997.

Decided Jan. 22, 1998.

Richard J. Rubin (argued), Santa Fe, NM, Mary C. Fons, Stoughton, WI, for Plaintiffs–Appellants.

Darrell R. Banks (argued), Banks & Fanning, P.C., Lansing, MI, for Defendant–Appellee.

Before CUMMINGS, WOOD, Jr., and COFFEY, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiffs Ron and Stacie Kobs commenced this action against defendant Arrow Service Bureau, Inc. ("Arrow") alleging numerous violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, arising from Arrow's collection of an alleged consumer debt. They sought statutory and actual damages as well as reasonable attorney's fees and costs, in accordance with 15 U.S.C. § 1692k(a), and requested trial by jury. A jury trial was held on the issue of liability which resulted in a verdict that Arrow violated the rights of plaintiffs under the FDCPA and awarded actual damages to plaintiff Stacie Kobs. Granting Arrow's mo-

tion requesting that the issue of statutory damages not be submitted to the jury, the court then awarded statutory damages to Ron Kobs and not to Stacie Kobs. Holding that the FDCPA provides for trial by jury in determining statutory additional damages under the FDCPA, we remand so that the district court can impanel a jury for the purpose of determining the amount of statutory damages, if any, due to the plaintiffs.

**Facts**

Arrow is a debt collection agency with 100 employees and approximately 400,000–500,-000 current accounts. In December of 1995, Arrow purchased debts originally owed to American TV, including one alleged to be owed by Mr. Kobs. On January 4, 1996, Arrow sent an initial collection letter to an address where the Kobs no longer resided. On January 11, 1996, Arrow telephoned Mrs. Kobs who told the collector that they no longer lived at the address Arrow had listed for them and that they had not received the initial letter and provided the collector with their current address. On January 24, 1996, more than five days after the initial communication on January 11, Arrow sent the letter, which included the validation notice required by 15 U.S.C. § 1692g on the bottom portion of the reverse side, to the correct address.

During January 1996, Mrs. Kobs received more than five calls from Arrow debt collectors, and Mr. Kobs received between one and three calls. Mrs. Kobs informed one of the collectors that they did not owe any money on the American TV account as confirmed by a credit bureau report showing no balance on their debt. Mrs. Kobs received the majority of her calls from a woman who identified herself as Sharon Tobias. Mrs. Kobs was upset by how rudely and disrespectfully Ms. Tobias behaved on these telephone calls.

In order to put an end to the harassing phone calls, Mr. Kobs then sought the assistance of attorney Carla Andres in early February. When Mrs. Kobs received another telephone call from Ms. Tobias, she advised Ms. Tobias of Ms. Andres' representation of her and her husband and gave the collector the attorney's name, address, and telephone number. Arrow's computer log confirmed receipt of this information. Under Arrow's policy, debt collectors may not contact a consumer known to be represented by an attorney; however, collectors need not rely on a consumer's notification of attorney representation and are permitted to verify this fact with the attorney. Arrow did not attempt to contact Ms. Andres after being informed of her representation. Arrow contacted the Kobs again in April, calling on April 9, April 21, and again on May 8.

In addition to receiving telephone calls from Arrow after notifying Arrow that they were represented by counsel, the Kobs received another letter from Arrow dated April 22, 1996. The letter stated that it was a "NOTICE BEFORE RECOMMENDATION OF SUIT" and threatened a lawsuit at once, demanding that the Kobs contact Arrow within seven days of the notice date or mail full payment to avoid litigation. The Kobs did not contact Arrow within seven days, and Arrow never filed suit as threatened in the April 22, 1996 letter.

Arrow waited three months after the Kobs informed Arrow that they were represented by counsel before initially contacting the Kobs' attorney. Attorney Andres informed Arrow that she represented the Kobs. When Ms. Tobias subsequently called Mrs. Kobs on May 8, Ms. Tobias responded to Mrs. Kobs' claim that they were represented by an attorney by stating that she had spoken to Ms. Andres, and Ms. Andres knew nothing about the case.

The Kobs claim that Arrow engaged in abusive, deceptive, and unlawful collection practices resulting in numerous violations of the FDCPA. Specifically, they claim that (1) Arrow failed to provide the requisite statutory validation and dispute notice within five days of its initial communication with the Kobs, in violation of § 1692g(a); (2) the language in the January 24, 1996 letter from Arrow contradicted and overshadowed the validation notice on the reverse side, in violation of § 1692g(a); (3) Arrow engaged in conduct to harass, oppress, or abuse the Kobs during collection telephone calls, in violation of § 1692d; (4) Arrow communicated with the Kobs after Arrow knew they were represented by an attorney, in violation of

§ 1692c(a)(2); (5) Arrow threatened litigation without intending to follow through with the threats, in violation of § 1692e(5); (6) the April 22 letter threatening litigation conveyed a false sense of urgency by requiring full payment or phone contact within seven days to avoid a lawsuit, in violation of § 1692e(10); (7) the April 22 letter from Arrow to the Kobs made false, deceptive, and misleading representations by failing to provide information concerning exempt property when discussing the process of obtaining a judgment, garnishment, or attachment, in violation of § 1692e(10); (8) the debt collector's statements that the Kobs' attorney knew nothing about the case was an attempt to harass, oppress, and abuse Mrs. Kobs and was also false, deceptive, and misleading, in violation of § 1692d and § 1692e(10).

In a pre-trial motion, Arrow requested that the award of statutory damages be decided by the judge and not submitted to the jury. The court granted the motion over the Kobs' objection. In response, the Kobs proposed a special verdict form in order to provide guidance to the court when making the statutory additional damage determination. However, the court refused to use the special verdict form.

A jury trial was held on the issue of liability which resulted in a verdict that defendant violated the rights of both plaintiffs under the FDCPA and awarded actual damages to plaintiff Stacie Kobs in the amount of $1500. The jury did not award plaintiff Ron Kobs actual damages. After trial the court awarded statutory damages to plaintiff Ron Kobs in the amount of $100 pursuant to § 1692k (a)(2)(A) and no statutory damages to plaintiff Stacie Kobs.

The issue raised before this Court is whether the determination of statutory additional damages under the FDCPA should have been submitted to the jury or whether the court was permitted to make such determination. We hold that 15 U.S.C. § 1692k(a)(2)(A) provides for trial by jury in determining statutory additional damages and thus remand for a jury to determine the amount of statutory damages, if any, to which the Kobs are entitled.

**Analysis**

■ Section 1692k of the FDCPA provides in pertinent part:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of-

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000,
* * * *

15 U.S.C. § 1692k.

■ The Eleventh Circuit has been the only federal court of appeals to address the issue of whether § 1692k(a) provides for trial by jury in an action for damages under the FDCPA. In *Sibley v. Fulton DeKalb Collection Service,* 677 F.2d 830 (11th Cir.1982), the court held that a party upon timely demand is entitled to a jury trial in an action for damages under the FDCPA. *Id.* at 832. The court noted that there are two possible sources of a right of trial by jury for a statutory cause of action. *Id.* Congress may provide for trial by jury in the statute that creates the claim regardless of whether the claim involves rights and remedies of the type traditionally enforced in a court of law before a jury. *Id.* Alternatively, if the claim involves rights and remedies of the type traditionally enforced in an action at law, the Seventh Amendment requires that the right of jury trial be preserved. *Id.*

In analyzing whether there is a statutory basis for a jury trial under § 1692k(a), the court recognized that the FDCPA states that any debt collector who violates the Act is liable in an amount equal to the sum of actual damages and "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). However, the Eleventh Circuit noted that "[i]t has been frequently determined * * * that the word 'court,' used in the Act and in the remedial portions of numerous other statutes, encompasses trial by both judge and jury rather than by judge alone." *Sibley,*

677 F.2d at 832. Therefore, the *Sibley* court chose to interpret the word "court" to include trial by both judge and jury, finding that such an interpretation avoids the serious constitutional issues that would be raised under the Seventh Amendment if the Act was construed to prohibit trial by jury. *Id.* at 833. In *Rogers v. Loether,* 467 F.2d 1110, 1122–1123 (7th Cir.1972), aff'd. sub nom. *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260, this Court reached the same interpretation of the statutory language "the court," reading it broadly to include both judge and jury. Therefore, the statutory language does not establish that the court rather than a jury must determine the statutory damage award, and defendant Arrow's argument that the amount of statutory damages be determined by the court without a jury fails.

■ The question then is whether the Seventh Amendment [1] to the Constitution mandates a jury trial. This analysis involves a determination of whether the rights under the statute are rights that would have been resolved historically at law by a jury or in equity by a judge and whether the relief requested by the plaintiff is traditionally granted by a jury at law or by a judge in equity. *Sibley,* 677 F.2d at 833; see *Curtis v. Loether,* 415 U.S. 189, 195–96, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260. The *Sibley* court found that because the rights under the FDCPA most resemble tort actions for collection abuses which traditionally have been viewed as being resolved at law and because the relief sought is monetary damages which is the traditional form of relief offered in the courts of law, the § 1692k(a)(2) reference to an allowance of damages by the court must be construed to embody the right of trial by jury. *Sibley,* 677 F.2d at 834.

We recognize that this case presents a slightly different factual situation than *Sibley.* In *Sibley,* plaintiffs were claiming both actual and statutory damages. The court did not bifurcate the proceeding, submitting actual damages to the jury and reserving the statutory damage issue for the judge. In this case, liability and actual damages were ascertained by a jury and the district court only determined the award of statutory damages up to the $1,000 maximum. We find this distinction insignificant. In its decision, the Eleventh Circuit did not distinguish between actual and statutory damages and held that "a party upon timely demand is entitled to a jury trial in an action for *damages* under the Fair Debt Collection Practices Act," *id.* at 832 (emphasis added), indicating that a party is entitled to a jury trial for *all* damages under the FDCPA—statutory or actual. In addition, under a provision of the Truth in Lending Act ("TILA") analogous to § 1692k(a) of the FDCPA, the Fourth Circuit in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir.1978), certiorari denied, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330, has held that the statutory damage determination, standing alone, should be submitted to the jury.

The civil liability section of the TILA, 15 U.S.C. § 1640, is similar to the FDCPA in its structure and effect. Like the FDCPA, the TILA provides for actual and statutory damages to the prevailing consumer in the event of a violation of its disclosure requirements. 15 U.S.C. § 1640(a). Specifically, § 1640(a) of the TILA at the time of the *Barber* decision [2] provided that

> any creditor who fails to comply with any requirement imposed under this part * * * with respect to any person is liable to such person in an amount equal to the sum of
>
> (1) any actual damage sustained by such person as a result of the failure;
>
> (2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000 * * * *

*Id.*

In *Barber,* the Fourth Circuit held that the district court erred in fixing statutory

---

**1.** The Seventh Amendment provides that "[i]n Suits at common law, where the value of the controversy shall exceed twenty dollars, the right of trial by jury shall be preserved * * * * "

**2.** This section of the TILA has been amended since the *Barber* decision.

damages and in not submitting the damage issue to a jury. *Barber,* 577 F.2d at 224. The district court found no actual damages sustained by plaintiff class but, exercising the discretion authorized by § 1640(a)(2), awarded statutory damages of $100,000, the maximum amount then allowable under the statute for class actions. *Id.* at 222. The district court concluded that the maximum award was appropriate after carefully examining the five factors specified by Congress as relevant to the determination of statutory damages.[3] *Id.* While the Fourth Circuit did not question the accuracy of the district court's factual findings in regard to its determination, the court nonetheless concluded that the district court should have submitted the statutory damage issue under § 1640(a)(2) to a jury as demanded by defendants.

In reaching its decision, the Fourth Circuit relied on the Supreme Court's decision in *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260, which affirmed the Seventh Circuit's decision in *Rogers v. Loether,* 467 F.2d 1110 (7th Cir.1972). In *Curtis,* plaintiff filed a private enforcement action under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.,* alleging racial discrimination in housing for which she requested both compensatory and punitive damages. 415 U.S. at 190, 94 S.Ct. at 1006. Defendant's demand for a jury trial was denied, and the court awarded plaintiff no actual damages and $250 in punitive damages. *Id.* at 191, 94 S.Ct. at 1006–1007. The Seventh Circuit reversed the district court on the jury trial issue, and the Supreme Court affirmed in a unanimous decision. *Id.* The issue was whether a jury trial was required under 42 U.S.C. § 3612(c), which provides that "[t]he court * * * may award to the plaintiff actual damages and not more than $1,000 punitive damages * * * *" Finding a constitutional right to a jury trial, the Supreme Court reasoned that a damages action under Title VIII is an action to enforce legal rights,

sounding basically in tort, and, more important, that the relief sought, actual and punitive damages, is the traditional form of relief offered in the courts of law. *Id.* at 195–96, 94 S.Ct. at 1009.

Applying *Curtis,* the court in *Barber* reasoned that a damages action under the TILA sounds basically in tort and, therefore, is akin to an action brought at common law. *Barber,* 577 F.2d at 225. Furthermore, the court reasoned that statutory damages under § 1640(a)(2) "is nothing more than a prayer for statutorily-authorized punitive damages, * * * [which as the Court in *Curtis* noted] are within the 'traditional form of relief offered in the courts of law' " and, therefore, the remedy is legal in nature. *Id.* at 225 (quoting *Curtis,* 415 U.S. at 196, 94 S.Ct. at 1009). See *Johnson v. Eaton,* 80 F.3d 148, 151–152 (5th Cir.1996) (court considered additional statutory damages under the FDCPA punitive in nature). Therefore, the Fourth Circuit held that on remand, the district court must impanel a jury for the purpose of determining the amount of statutory damages under § 1640(a)(2) of the TILA. *Barber,* 577 F.2d at 226.

■ We find that the Fourth Circuit's decision resolves any ambiguity as to whether the statutory damage issue, standing alone, should be submitted to the jury. Therefore, based on the Eleventh Circuit's decision in *Sibley* under the FDCPA and the Fourth Circuit's decision in *Barber* under the analogous provision of the TILA, we hold that § 1692k(a)(2) of the FDCPA provides for trial by jury in determining statutory additional damages and remand to the district court to impanel a jury for the purpose of determining the amount of statutory damages, if any, due to the plaintiffs. In instructing the jury on the issue of damages, the district court should inform the jury as to the maximum recovery allowable under law and as to the factors set forth in

---

**3.** These are: "(1) the amount of actual damages sustained by the class, (2) the frequency and persistence of non-compliance, (3) defendant's resources, (4) the number of persons adversely affected by non-compliance, and (5) the extent to which non-compliance was intentional." *Barber,* 577 F.2d at 224 n. 16. Section 1692k (b)(1) of the

FDCPA sets forth factors similar to those under the TILA for the court to analyze in determining the award of statutory damages. They are "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

§ 1692k(b)(1) of the FDCPA which Congress has determined should be considered and which include "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."

Having found a jury issue, we need not address plaintiffs' claim that a special verdict form should have been used and that the judge applied incorrect criteria or otherwise abused his discretion in setting the award of statutory additional damages.

REVERSED AND REMANDED WITH DIRECTIONS FOR A JURY TRIAL.